JS-6    'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.S.L. INVESTMENTS, LLC,<br><br>     Plaintiff,<br><br>    v.<br><br>ASHA OROSKAR, ET AL.,<br><br>     Defendants. | CV 22-2953-RSWL-ASx<br><br>**ORDER re: MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY COURT PROCEEDINGS** [27] |

Plaintiff S.S.L. Investments, LLC ("Plaintiff") brought the instant Action against Defendants Asha Oroskar, Anil Oroskar, Priyanka Sharma, Pulak Sharma, Gregory Rocklin, Orochem Technologies, Inc., and Kazmira LLC, ("Defendants") alleging violation of RICO, conspiracy to violate RICO, fraud, fraudulent concealment, unlawful business practices, and false advertising.  Currently before the Court is Defendants' Motion to Compel Arbitration and Dismiss or Stay Court

1

Proceedings [27].

Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendants' Motion to Compel Arbitration, **ORDERS** the parties to arbitrate their dispute in accordance with the terms of the Agreement, and **DISMISSES** the Action without prejudice.

## I. BACKGROUND

### A. Factual & Procedural Background

In May 2018, Defendants[1], representatives of Shoolin and/or Orochem approached Plaintiff, processor and wholesale distributor of Tetrahydrocannabinol ("THC") oil, to propose that Plaintiff use Shoolin's column and SMB chromatography systems ("proprietary technology") to process THC oil. Compl. ¶¶ 22-26. Specifically, Plaintiff alleges that Defendants explained the effectiveness of Shoolin's proprietary technology and its ability to produce THC purity levels of at least ninety percent while

---

[1] Each individually named Defendant is tied, directly or indirectly, to Shoolin, LLC ("Shoolin"). Defendant Asha Oroskar is President and Chief Executive Officer ("CEO") of both Shoolin and Orochem Technologies, Inc. ("Orochem"). Compl. ¶ 3, ECF No. 1; Mot. to Compel Arbitration and Dismiss or Stay Court Proceedings ("Mot.") 10:2-3, ECF No. 27. Meanwhile, Defendant Anil Oroskar is Principal and Chief Technology Officer of Orochem. Compl. ¶ 4. Together, these two Defendants formed Kazmira LLC ("Kazmira") with Orochem. Id. ¶ 5. Defendants Priyanka Sharma and Pulak Sharma are co-CEOs of Kazmira. Id. ¶ 7. And finally, Defendant Gregory Rocklin is a business development agent for Orochem and Kazmira. Id. ¶ 8.

2

decreasing costs and retaining cannabinoids present in the raw material. Id. ¶ 82.

After several months of discussing the capabilities of Shoolin's proprietary technology, in August 2018, Plaintiff entered into a signed contract ("the Agreement") with Shoolin to install and operate their equipment in Plaintiff's facility. Id. ¶¶ 23-38; Sealed Decl. in Supp. of Appl. ("Agreement"), ECF No. 26-1. The Agreement contained an arbitration clause, which stated in pertinent part: "any and all disputes arising out of or relating to this Agreement shall be exclusively and finally resolved by binding arbitration." Agreement at 12; Mot. 8:26-27.

Plaintiff alleges that "Defendants installed their equipment" in Plaintiff's facility in November 2018. Compl. ¶ 38. Plaintiff contends that the equipment repeatedly failed to meet the promised production specifications, that Defendants failed to deliver some equipment, and that Defendants used Plaintiff's facility for Defendants' own research and development rather than for processing Plaintiff's THC oil. Id. ¶¶ 38-53. Plaintiff alleges that, due to the equipment's failure, it suffered loss of profits, clients, and credibility in the California cannabis market. Id. ¶ 42. From December 2018 to July 2019, Plaintiff continued to rely on Shoolin's claims, and at Shoolin's request, invested more money into the equipment and incurred more losses.

1  Id. ¶¶ 43-46.  Then in August 2019, Shoolin terminated
2  its business relationship with Plaintiff and proceeded
3  to remove its equipment from Plaintiff's facility in
4  October 2019.  Id. ¶¶ 53, 54.
5      Based on these events, Plaintiff brought this
6  Action against Defendants for violation of RICO,
7  conspiracy to violate RICO, fraud, fraudulent
8  concealment, unlawful business practices, and false
9  advertising.  See generally Compl.  Plaintiff filed its
10 Complaint [1] on May 3, 2022.  Defendants filed the
11 instant Motion [27] on July 22, 2022.  Plaintiff opposed
12 [31] Defendants' Motion on August 9, 2022, and
13 Defendants replied [32] on August 16, 2022.

**II. DISCUSSION**

**A. Legal Standard**

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration." Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 938 (9th Cir. 2013).

"Generally, a court's role under the FAA is limited to determining 'two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" Manuwal v. BMW of N. Am., LLC, 484 F. Supp. 3d 862, 865 (C.D. Cal. 2020) (quoting Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015)).

**B.  Analysis**

Defendants assert that the Court must compel arbitration under the FAA because the Agreement's arbitration clause is valid and binding on Plaintiff. See generally Mot. Alternatively, Defendants invoke the doctrine of equitable estoppel and agency principles to compel arbitration. Id. The Court finds that the doctrine of equitable estoppel applies and therefore grants[2] Defendants' Motion to Compel Arbitration.

Non-signatories to a contract with an arbitration clause may be bound to arbitration by the following principles: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006). Equitable estoppel "precludes a party from claiming the benefits of a contract while

---

[2] Since the Court grants Defendants' Motion to Compel Arbitration on equitable estoppel grounds, the Court need not address the parties' agency arguments.

5

simultaneously attempting to avoid the burdens that contract imposes." Id. (quoting Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir. 2004)).

This principle, under both federal and California law, permits non-signatory defendants to invoke an arbitration clause "when the causes of action against the non-signatory are 'intimately founded in and intertwined' with the underlying contract obligations." Boucher v. All. Title Co., Inc., 25 Cal. Rptr. 3d 440, 446 (2005). In other words, the relevant causes of action must "rely on and presume the existence of the contract." Id. at 444. Relevantly, the "focus is on the nature of the claims asserted by the plaintiff against the non-signatory defendant." Id. at 447. Thus, claims sounding in tort that rely on or presume the existence of a contract do not avoid an arbitration clause. Id. (finding that a defendant could compel arbitration because Plaintiff's tort claims relied on or presumed the existence of the employment agreement).

Defendants argue that equitable estoppel applies here because Plaintiff's claims against Defendants "specifically incorporate by reference the essential terms of the Agreement." Mot. 18:20-21. Although Plaintiff's claims are based in tort, each claim Plaintiff raises against Defendants relies on or refers to the Agreement. See Lucas v. Hertz Corp., 875 F. Supp. 2d 991, 1003 (N.D. Cal. 2012) (finding that plaintiff's claims "ma[de] reference to or presume[d]

6

the existence of the underlying contract since plaintiff would not have been able to rent the car or have any relationship with Hertz without first signing the rental agreement").

Each cause of action in Plaintiff's complaint — violation of RICO, conspiracy to violate RICO, fraud, fraudulent concealment, unlawful business practices, and false advertising — arises from Plaintiff's contentions that Defendants misrepresented the capabilities of their proprietary technology, their proficiency in purifying cannabis oil, the technology that would be provided, and their intent to conduct research and development at Plaintiff's facility.  Compl. ¶ 51.  Since the Agreement specified that Defendants would provide effective proprietary technology and operate it in Plaintiff's facility, Plaintiff's claims ultimately rely on obligations provided in the Agreement.  Agreement at 6.  The Court addresses Plaintiff's claims in turn.

    1.  <u>Claims One and Two: Violation of RICO and Conspiracy to Violate RICO</u>

First, Plaintiff alleges that Defendants violated RICO and conspired to violate RICO.  Compl. ¶¶ 17-23.  Specifically, Plaintiff claims Defendants committed the predicate acts of wire fraud and causing the transportation of persons and at least $5,000 in interstate commerce by means of fraud.  Id.  In support of these allegations, Plaintiff contends that Defendants committed wire fraud by transmitting and causing to be

transmitted writings by means of wire communications in interstate commerce for the purpose of defrauding Plaintiff. Id. ¶ 64. Plaintiff also alleges that Defendants solicited and accepted transfers of money in interstate commerce with the knowledge that it was obtained by fraud. Id. Finally, Plaintiff states that Defendants induced Plaintiff to travel from California to Illinois in furtherance of a scheme to defraud. Id.

    Plaintiff's claims arise out of the Agreement and the parties' conduct regarding the Agreement. First, Plaintiff shares excerpts of Defendants' interstate e-mails describing the capabilities of Shoolin's proprietary technology, Orochem's potential impact on Plaintiff's production, plans to set up Defendants' system in Plaintiff's facility, and Defendants' willingness to "structure the deal" to guarantee such outcomes. Id. ¶ 66. Plaintiff contends that Defendants' representations regarding the capabilities of Shoolin's proprietary technology constitute fraud, and those capabilities are guaranteed in the Agreement. Id. ¶ 37; Agreement at 19. Thus, Plaintiff's wire fraud allegations relate to the Agreement.

    Next, the Agreement provides that Plaintiff would transfer funds in interstate commerce to Defendants and third parties, and Plaintiff contends it wired funds to Defendants due to fraud. Section 2.10 states that Plaintiff "shall pay to Shoolin an amount equal to Shoolin's Direct Manufacturing Costs with respect to

1 such Product." Id. at 4.  And Section 2.1 of the
2 Agreement states in pertinent part that "[Plaintiff]
3 shall supply sufficient quantities of Material...at
4 [Plaintiff]'s sole expense."  Agreement at 3.  These
5 provisions require Plaintiff to transfer funds either
6 directly to Shoolin, to Shoolin's representatives, or to
7 a third party.
8     Moreover, Plaintiff details two domestic wire
9 transfers from Plaintiff to Orochem in 2018 and 2019.
10 Compl. ¶ 67.  Plaintiff alleges that these wire
11 transfers were sent "due to fraud" and claims that
12 Defendants defrauded Plaintiff by misrepresenting the
13 capabilities of Shoolin's proprietary technology, the
14 equipment that Plaintiff would receive, and Defendants'
15 use of Plaintiff's facility.  Id. ¶¶ 51, 67.  And the
16 capabilities, equipment, and operation specifications
17 that Defendants allegedly misrepresented to Plaintiff
18 were ultimately outlined in Plaintiff's the Agreement
19 with Shoolin.  Id.; see generally Agreement.  Therefore,
20 Plaintiff's allegations that Defendants solicited and
21 accepted transfers of fraudulently obtained money in
22 interstate commerce arise out of or relate to the
23 Agreement.
24     Finally, Plaintiff alleges that its representative
25 traveled from California to Illinois to meet with
26 Defendants on July 26, 2018.  Id. ¶ 68.  Once again,
27 Plaintiff alleges this was "in the execution of a scheme
28 to defraud," and claims the fraud was the

misrepresentation of the proprietary technology and services contracted for in the Agreement. Id. ¶¶ 51, 68. Therefore, these claims arise out of or rely upon the existence of the Agreement.

### 2. Claim Three: Fraud

Next, Plaintiff alleges fraud, arguing that Defendants falsely claimed their proprietary technology would purify crude THC oil to a minimum of ninety percent concentration and it did not. Compl. ¶ 88. Meanwhile, the "Specifications" section of the Agreement provides that the Proprietary Technology would produce "THC oil containing at least ninety percent of the THC and THCA contained in raw material". Agreement at 19. Thus, Plaintiff's claim relies on obligations set forth in the Agreement.

### 3. Claim Four: Fraudulent Concealment

Plaintiff also alleges fraudulent concealment, contending that Defendants concealed from Plaintiff that their proprietary technology was not fully developed. Compl. ¶¶ 94-98. Similar to Lucas, where the plaintiff would not have had access to the vehicle at issue without first entering the contract, here, Plaintiff would not have implemented the proprietary technology if Plaintiff did not first sign the Agreement. Thus, Plaintiff's claim presumes the existence of the contract.

///
///

### 4. Claims Five and Six: Unlawful Business Practices and False Advertising

Lastly, Plaintiff alleges unlawful business practices and false advertising. Id. ¶¶ 99-112. In support of these claims, Plaintiff alleges that Defendants made material misrepresentations, omissions, or untrue or misleading statements about their proprietary technology and the operation of the technology.[3] Id. ¶¶ 102, 109. Such claims rely on the existence of the Agreement because the asserted effectiveness of the proprietary technology, and Defendants' obligations to provide and operate the technology, are established in the Agreement. Agreement at 6, 19. Indeed, the Agreement provides that Shoolin would "purchase, build, deliver, install, transport, and use commercially reasonable efforts to qualify its proprietary purification process" and that the resulting THC oil would "contain at least ninety percent of the

---

[3] Plaintiff bases its unlawful business practices claim on section 17200 of the California Business and Professional Code, which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Courts recognize that "[v]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a . . . [section] 17200 'unlawful' violation." Klein v. Chevron U.S.A., Inc., 137 Cal. Rptr. 3d 293, 326-27 (2012) (quoting Paulus v. Bob Lynch Ford, Inc., 43 Cal. Rptr. 3d 148 (2006)). The Plaintiff's four other causes of action are suitable predicates for Plaintiff's section 17200 claim. And, as stated above, this Court finds that Plaintiff's first four claims arise from or rely on the Agreement. Therefore, Plaintiff's section 17200 claim necessarily arises from or relies on the Agreement as well.

11

1  THC and THCA in the raw material." Id.  Therefore,
2  Plaintiff's unlawful business practices and false
3  advertising claims arise out of or rely upon the
4  Agreement.
5     In sum, since all Plaintiff's claims rely on or
6  presume the existence of the contract, Defendants may
7  compel arbitration through the doctrine of equitable
8  estoppel.
9     5.   Stay or Dismiss
10    Having determined that the parties' dispute is
11 arbitrable, the Court next addresses whether to stay or
12 dismiss this Action pending completion of arbitration
13 proceedings.  Under the FAA, if the court is satisfied
14 that a dispute is referable to arbitration, it "shall on
15 application of one of the parties stay the trial of the
16 action until such arbitration has been had in accordance
17 with the terms of the agreement."  9 U.S.C. § 3.  The
18 Ninth Circuit has held that, "notwithstanding the
19 language of § 3, a district court may either stay the
20 action or dismiss it outright when, as here, the court
21 determines that all of the claims raised in the action
22 are subject to arbitration."  Johnmohammadi v.
23 Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir.
24 2014).  All of Plaintiff's claims are subject to
25 arbitration, and neither party argues for a stay in the
26 event the Court compels arbitration of all causes of
27 action.  See Mot. 21:11-20l; Opp'n. 12:7-11.  As a
28 result, the Court in its discretion **DISMISSES** the Action

12

without prejudice.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion and **ORDERS** the parties to arbitrate their dispute in accordance with the terms of the Agreement.  The Action is **DISMISSED** without prejudice. The Clerk of the Court shall close this Action.

**IT IS SO ORDERED.**

DATED: October 11, 2022           /s/ **RONALD S.W. LEW**
                                           **HONORABLE RONALD S.W. LEW**
                                           Senior U.S. District Judge